IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRIANNE D. OLESON,

        Plaintiff,

        v.

MICHAEL J. ASTRUE,
Commissioner of Social Security

        Defendant.

_____

Civil No. 06-6287-AS

FINDINGS AND RECOMMENDATION

ASHMANSKAS, Magistrate Judge:

Plaintiff Brianne D. Oleson ("Oleson") seeks judicial review of the Social Security Commissioner's final decision denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Commissioner's final decision should be reversed and remanded for the immediate calculation and award of

1 - FINDINGS AND RECOMMENDATION

benefits.

## BACKGROUND

Born in 1980, Oleson has a ninth grade education with a general equivalency degree. Tr. 62, 582.[1]  Oleson reports work as a customer service representative and telemarketer. Tr. 78.

Oleson filed the present applications on April 15, 2004 , alleging disability since November 20, 2000, due to post-traumatic stress disorder, right arm numbness, "hard of hearing," ankylosing spondylitis, [cervical] dysplasia, chronic bronchitis, and asthma. Tr. 62-64, 77, 555-56.  After Oleson's May 16, 2006, hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Oleson could perform significant work in the national economy and, therefore, was not disabled. Tr. 22-23.  The Appeals Council denied review, making the ALJ's decision final. Tr. 6-8.  Oleson presently appeals.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act.  20 C.F.R. § 404.1520, Bowen v. Yuckert, 482 U.S. 137, 140 (1987).  Oleson challenges the ALJ's evaluation of the evidence and his conclusions at steps two, three, and five.

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement.  20 C.F.R. §§ 404.1509,

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer March 14, 2007 (Docket #6).

2 - FINDINGS AND RECOMMENDATION

404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. Id.

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If she determines the impairment meets or equals a listed impairment, the claimant is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. §§ 404.1520(e), 416.920(e), Social Security Ruling ("SSR") 96-8p. The ALJ uses this information to determine if the claimant can perform her past relevant work at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. Yuckert, 482 U.S. at 141-2; Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999), 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f), 416.920(a)(4)(v), 416.920(f).

The initial burden of establishing disability rests upon the claimant. Tackett, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." Id. at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§

3 - FINDINGS AND RECOMMENDATION

404.1566, 404.1520(g), 416.966, 416.920(g).

## THE ALJ'S FINDINGS

The ALJ found Oleson's migraine headaches, ankylosing spondylitis, and "major depression, panic and personality disorders" "severe" at step two in the sequential analysis. Tr. 16. The ALJ found that Oleson's impairments did not meet or equal a listing at step three and evaluated Oleson's RFC:

> [T]he claimant has the residual functional capacity to lift up to twenty pounds occasionally and ten pounds frequently. She can sit for six hours out of an eight-hour workday, and stand for six hours out of an eight-hour workday. The claimant is limited to simple, routine tasks and instructions. She is limited to only occasional public and coworker contact.

Tr. 16-17. The ALJ subsequently found that Oleson could not perform her past relevant work at step four, but that she could perform significant work in the national economy at step five. Tr. 21.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Commissioner for Social Security Administration, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh the evidence that supports and detracts from the ALJ's conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 5, 2007)(citing Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. Id. (citing Robins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006)), see also Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir.

2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. Batson, 359 F.3d at 1193.

## DISCUSSION

Oleson contends that the Commissioner failed to meet his burden at step five in the sequential proceedings because, in construing Oleson's RFC assessment, the ALJ failed to accurately assess both her credibility and the medical evidence. Oleson also contends that the ALJ's erroneously considered her transferable skills in his step five analysis.

**I.    Step Two Findings**

Oleson submits that the ALJ "failed to make" step two findings "as to the existence and severity of Plaintiff's personality disorders, dissociative disorder, and possible somatoform disorder." Pl. Opening Br. 16.

At step two in the sequential proceedings, the ALJ determines if the claimant has a "severe" impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is "severe" if it "significantly limits your ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c), *see* also 20 C.F.R. §§ 404.1521, 416.921. Such an impairment must last, or be expected to last, twelve months. 20 C.F.R. §§ 404.1509, 416.909.

The court first notes that the ALJ found Oleson's personality disorders "severe" at step two. Tr. 16. Oleson's present submission pertaining to her personality disorder is not based upon the record and should not be sustained. Regarding the ALJ's other alleged omissions, the ALJ's analysis at steps four and five must consider all of a claimant's impairments, both severe and non-severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). Because the ALJ proceeded beyond step three, any omission regarding a step two severity finding is inconsequential. Lewis

v. Astrue, 498 F.3d 909 (9th Cir. 2007). The ALJ's step two findings should be sustained.

## II.     Step Three Findings

Oleson also alleges that the ALJ failed to properly consider whether her somatoform disorder met listing-level severity at step three in the sequential proceedings. Pl. Opening Br. 16. Oleson does not point to evidence in the record supporting her submission that she has listing-level somatoform disorder. Id. at 8, 16. This court finds no such reference in the record. Furthermore, it is counsel's professional responsibility to advise this court of precisely which evidence supports an argument for equivalence to a precise regulation. For these reasons, this argument should not be sustained.

## III.    Credibility

Oleson asserts that the ALJ failed to provide adequate reasons for rejecting her testimony. The ALJ found Oleson's testimony "with respect to the severity of her symptoms and limitations" not credible. Tr. 18. The ALJ cited Oleson's drug-seeking behavior and suggested that the medical record does not corroborate Oleson's reports of her symptoms. Tr. 19.

### A.     Credibility Analysis

Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged" the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. Lingenfelter, 504 F.3d at 1036 (citing Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as

the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. Id. Once a claimant shows an underlying impairment, the ALJ may not, however, make a negative credibility finding "solely because " the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." Robbins, 466 F.3d 880, 883 (9th Cir. 2006).

### B.   Discussion

The ALJ's findings reiterated record reports of Oleson's drug-seeking behavior. Tr. 18-19. The ALJ cited numerous instances in the record demonstrating Oleson's emergency room visits requesting narcotic painkillers. Tr. 18-19, 21-22. The record supports these references.

The ALJ may consider a claimant's reputation for dishonesty or conflicts between her testimony and her conduct. Smolen, 80 F.3d at 1284, Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). However, the ALJ fails to note that emergency room physicians provided Oleson with pain medication. This court must assume that emergency room physicians provided medication for therapeutic reasons. Therefore, the ALJ's inference that Oleson is not credible because she sought and obtained narcotic medications should not be sustained.

The ALJ also inferred that the medical evidence did not support Oleson's symptom testimony. Such inferences are impermissible. Once a claimant shows an underlying impairment which could cause the claimant's reported symptoms (not that it in fact did), the ALJ may not reject a claimant's symptom testimony because it is unsupported by the medical evidence. Smolen, 80 F.3d at 1282 (citing Bunnell v. Sullivan, 947 F.3d 341, 344 (9th Cir.

7 - FINDINGS AND RECOMMENDATION

1991)). The ALJ's reliance upon the medical record to discredit Oleson should not be sustained.

In summary, this court is unable to sustain the ALJ's credibility decision because he based it entirely upon Oleson's alleged drug-seeking behavior and failed to make other credibility findings based upon the appropriate standards.

## IV.     Lay Testimony

Oleson submits that the ALJ "ignored" the testimony of Oleson's lay witness, James Morganstern. Pl. Opening Br. 16. The ALJ stated,

> James Morgenstern testified that the claimant could not do anything at all four to five days per month, and sometimes two to three weeks at a time. He explained that some days the claimant did nothing but curl up due to pain. He further explained that on better days the claimant was able to cook and do some things around the house. Mr. Morgenstern opined that the claimant was getting slightly worse.

Tr. 17. The ALJ did not "ignore" Morganstern's testimony. This submission is not based upon the record.

The ALJ must, however, give germane reasons for rejecting lay witness testimony. Stout v. Comm'r, 454 F.3d 1050, 1053 (9th Cir. 2006). This silent analysis should not be sustained.

## V.     The ALJ's Step Five Findings

Finally, Oleson challenges the ALJ's findings that she could perform work in the national economy. Oleson asserts that the ALJ should have determined if Oleson possesses transferable skills prior to making his step five finding. Pl. Opening Br. 13. Transferable skills are relevant "only when" an individual cannot perform past relevant work and "that work is determined to be skilled or semiskilled." SSR 82-41(1982 WL 31389) at *1. Transferable skills are not relevant when the ALJ finds a claimant can do unskilled work at step five. Id.

8 - FINDINGS AND RECOMMENDATION

Contrary to Oleson's submission, the ALJ did not find that Oleson could perform semi-skilled work at step five. Tr. 22. The ALJ identified unskilled jobs at step five, including work as a touch-up screener, cleaner-housekeeper, and photo copy machine operator. Id. Transferable skills are therefore irrelevant. SSR 82-41 at *1. Oleson's submission is not based upon the record and therefore fails.

## REMAND

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000.), cert. denied, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings.

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Harman, 211 F.3d at 1178, quoting Smolen, 80 F.3d at 1292. The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. Connett, 340 F.3d at 876 citing Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); Nguyen v. Chater, 100 F.3d 1462, 1466-67 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 348 (9th Cir. 1991).

Here, the ALJ erred in assessing Oleson's testimony. Oleson stated that she is absent from work due to migraines "one to two days per week." Tr. 583. The vocational expert testified that a hypothetical individual experiencing more than two absences per month would be

unable to sustain employment in the national economy. Tr. 604. The vocational expert's testimony establishes disability if the improperly rejected testimony is credited.

In such instances, award of benefits is appropriate. <u>Varney v. Secretary of Health and Human Services</u>, 859 F.2d 1396, 1401 (9th Cir. 1988). This court may not direct remand for evaluation of a claimant's credibility if no outstanding issues remain in the record. <u>Id.</u> Because Oleson's testimony establishes disability, the court will not address crediting Morganstern's testimony.

## CONCLUSION

Oleson does not establish that the ALJ erred at step two in the sequential proceedings, or that the ALJ erroneously considered her "transferable skills." However, the ALJ failed to provide appropriate reasons for rejecting Oleson's testimony and that of a lay witness. The vocational expert's testimony establishes disability if Oleson's improperly rejected testimony is credited. For this reason, the ALJ's decision should not be sustained and the matter should be remanded for benefits.

## RECOMMENDATION

The Commissioner's decision that Oleson did not suffer from disability and is not entitled to benefits under Titles II and XVI of the Social Security Act is not based upon correct legal standards or supported by substantial evidence. The Commissioner's decision should be REVERSED and REMANDED for immediate calculation and award of benefits.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due December 28, 2007. If no objections are filed, review of

the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections within 10 days after service of a copy of the objections. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.

IT IS SO ORDERED.

Dated this 13th day of December, 2007.

    /s/  Donald C. Ashmanskas
Donald C. Ashmanskas
United States Magistrate Judge